UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**BONITA COOPER**
    Plaintiff

**v.**                                                                                                        **No. 1:10CV-00012-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by M. Gail Wilson. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 14 and 15, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on June 30, 2009, by administrative law judge (ALJ) Ronald Kayser. In support of his decision denying Title II benefits, Judge Kayser entered the following numbered findings:

    1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

    2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 20, 2000, through her date last insured of December 31, 2006 (20 CFR 404.1571 et seq.).

    3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis of the left arm and wrist, rheumatoid arthritis, fibromyalgia, asthma, morbid obesity, hypertension, depression not otherwise specified and anxiety not otherwise specified (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she could sit for 6 hours, stand and walk for 5 hours each in an 8-hour workday with no standing/walking more than one hour at a time; no more than frequent climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, pushing and pulling; and no more than frequent operation of foot pedal controls. She had slight limitations in understanding, remembering and carrying out complex instructions, making judgments on complex work-related decisions, interacting with the general public and co-workers, responding appropriately to usual work situations and to changes in a routine work setting, but she could generally function well.

6. Through the date last insured, the claimant was capable of performing past relevant work as a general clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 20, 2000, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(f)).

(Administrative Record (AR), pp. 530-536).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of

evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking.

20 C.F.R. § 404.1521. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990).

### Fibromyalgia

The following information is provided for background purposes only. We do not adopt as accurate the following, and it does not constitute part of this court's judicial review. According to the article on fibromyalgia at Wikipedia.org:

> Fibromyalgia (new Latin, fibro-, fibrous tissues, Gk. myo-, muscle, Gk. algos-, pain, meaning muscle and connective tissue pain; also referred to as FM or FMS) is a medical disorder characterized by chronic widespread pain and allodynia, a heightened and painful response to pressure. Fibromyalgia symptoms are not restricted to pain, leading to the use of the alternative term fibromyalgia syndrome for the condition. Other symptoms include debilitating fatigue, sleep disturbance, and joint stiffness. Some patients may also report difficulty with swallowing, bowel and bladder abnormalities, numbness and tingling, and cognitive dysfunction. Fibromyalgia is frequently comorbid with psychiatric conditions such as depression and anxiety and stress-related disorders such as posttraumatic stress disorder. Not all people with fibromyalgia experience all associated symptoms. Fibromyalgia is estimated to affect 2–4% of the population, with a female to male incidence ratio of approximately 9:1.

Fibromyalgia "is diagnosed based upon observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and systematic elimination of other diagnoses." *Rogers v. Commissioner*, 486 F.3d 234 n.3 (6th Cir., 2007). Fibromyalgia's "causes are unknown, there is no [known] cure, and, of greatest importance to disability law, its symptoms are entirely subjective." Id.

**Discussion**

The plaintiff suffers from fibromyalgia. The plaintiff's "gatekeeper family physician" is Jeffrey Lengel (AR, p. 502). In 2005, she was seeing a rheumatologist, Paul Goldfarb, about every six months in connection with her fibromyalgia, and Dr. Goldfarb kept Dr. Lengel informed (AR, p. 470). On June 15, 2005, Dr. Lengel completed the Fibromyalgia Residual Functional Capacity Questionnaire in a manner that, if accepted, would require an ultimate finding of disability (AR, pp. 381-386).

In the prior final decision of the Commissioner here, the ALJ rejected Dr. Lengel's opinion, in part, based upon the testimony of a medical advisor, Charles Cooke, M.D. On November 8, 2007, this court remanded the matter to the Commissioner for a new decision. The court was

5

"most concerned with Dr. Cooke's testimony indicating that fibromyalgia alone can never be the basis for disability, Tr. 500-501" (AR, p. 564). On remand, the court required a new decision that comports with the rules for weighing treating source medical opinions (i.e., Dr. Lengel's opinion) and evaluating the plaintiff's credibility within the framework of *Rogers v. Commissioner*, supra.

The plaintiff's sole contention upon judicial review is that the ALJ's latest decision does not comply with this court's prior memorandum opinion and order of remand. For the reasons set forth below, we shall conclude that the argument is unpersuasive. We shall proceed as follows:

    1. Consider *Rogers* itself.

    2. Look at illustrative fibromyalgia cases, besides the present one, in which this court has applied *Rogers*.

    3. Revisit this court's determination that Judge Kayser's decision did not comport with *Rogers*.

    4. Analyze whether the Commissioner's final decision herein comports with *Rogers* and is consistent with this court's prior opinion and order.

### *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir., 2007)

Like the plaintiff, Ms. Rogers suffered from fibromyalgia, and her treating family physician, Dr. Evans, and her treating rheumatologist, Dr. Stein, opined limitations that, if accepted, would render her disabled. The non-examining state agency program physician, Dr. Rath, acknowledged that Ms. Rogers had fibromyalgia but opined limitations that appear to be consistent with an ability to perform medium or light work. Dr. Leeb testified at the administrative hearing concerning the impact of fibromyalgia upon Ms. Rogers' ability to work. He testified that "objectively" he found no evidence that she had a severe physical impairment but that, if her subjective complaints were

considered, she would be limited to sedentary work. In his written decision, the ALJ was equivocal on the issue of whether Mr. Rogers' fibromyalgia constituted a "severe" impairment. The ALJ ultimately found physical limitations "very similar" to those given by Dr. Rath.

The *Rogers* court was troubled by the fact that "the limitations [Dr. Rath] suggested were based upon the lack of objective findings." Hence, in light of the "unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia," the court held that the ALJ erred in relying upon medical opinions that unreasonably insisted upon objective findings. The court observed that the ALJ's decision was equivocal on the issue of whether the plaintiff suffered from "severe" fibromyalgia and indicated that this "hesitancy" in identifying fibromyalgia as a severe impairment may well have "influenced the ALJ's weighing of the treating physician evidence." The court remanded for a new decision giving good reasons for the weight given to the medical opinions of the treating sources.

The magistrate judge does not read *Rogers* as establishing "special" rules for weighing treating source medical opinions in cases involving fibromyalgia. Such an opinion should be treated as any other opinion with no attempt made by the ALJ or another physician to discount or subtract out the effect upon the individual's ability to work of symptoms that do not have a purely objective basis. As in any other case, the ALJ's decision must give "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). The opinion should be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." Id. If the opinion is not given controlling weight, it should be assigned its proper weight based upon a "consideration" of the following factors listed at § 404.1527(d): the length, frequency,

7

nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factor.

We do not read *Rogers* as establishing that, in cases of fibromyalgia, a particularly detailed and explicit documentation of the above "consideration" of regulatory factors is required. The root error in *Rogers* was that the ALJ based his residual functional capacity (RFC) finding upon a medical opinion (i.e., that of Dr. Rath) which committed the medical/legal error of discounting the effect of symptoms lacking a purely objective basis. In light of that error, the *Rogers* court was unable to conclude that the ALJ gave the treating source opinions their proper weight. Nor do we interpret *Rogers* as inviting a reviewing court to scrutinize a testifying medical expert's testimony for commentaries that are less than ideal in light of fibromyalgia's inherently subjective nature. If the expert acknowledged that the impairment is present and that it does, in fact, result in limitations in excess of those that can be established from a strictly objective standpoint, such testimony appears to us to be substantial.

The mere diagnosis of fibromyalgia, coupled with allegations of disabling subjective limitations, does not, ipso facto, require an ultimate finding of disability. In *Vance v. Commissioner*, 2008 WL 162942, the Sixth Circuit explained as follows (citing *Rogers*):

> Vance also argues that fibromyalgia is an unusual impairment in that its symptoms are often not supportable by objective medical evidence. See Rogers. We agree. Nonetheless, a diagnosis of fibromyalgia does not automatically entitle Vance to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that Vance's fibromyalgia was either improving or, at worst, stable. Some people may have a severe case of fibromyalgia as to be totally disabled from working but most do not and the question is whether claimant is one of the minority. ... Unlike in Rogers where claimant's fibromyalgia symptoms progressively worsened, Vance's symptoms have either improved or remained stable. *Rogers* at 245 (Physicians' documentation "consistently demonstrates" that symptoms "have progressively increased in severity.").

8

## Other illustrative cases decided by this court

In *Wimsatt v. Astrue*, 2008 WL 57834, Dr. Peters treated Ms. Wimsatt for fibromyalgia. The ALJ "reject[ed] the opinions of Dr. Peters as being inconsistent with the objective medical evidence." The court deemed this rationale to be legally insufficient and remanded for a new decision with respect to the weight to be given Dr. Peters' opinion. The Commissioner was directed to the *Rogers* case for further guidance, which the ALJ did not have the "benefit of" at the time of his decision.

In *Deckard v. Astrue*, 2009 WL 4758748, Dr. Campbell treated Ms. Deckard for fibromyalgia. The court affirmed the Commissioner's final decision, noting that "[i]n this case the ALJ did *(emphasis in original)* find her fibromyalgia to be a severe impairment, but he did not find that it imposed the limitations she claimed." The court affirmed the ALJ's weighing of Dr. Campbell's opinion for the following reasons:

> Dr. Campbell's opinion was certainly not uncontradicted; it conflicted with Dr. Barrett's examination findings. In determining that Dr. Campbell's opinion was not entitled to great weight, the ALJ noted that Dr. Campbell failed to provide any narrative explanation of the extreme limitations described in his opinion. The ALJ also observed that Dr. Campbell's treatment notes fail to support the opinion. For example, his notes on November 29, 2005, the day of his opinion, reported no unusual physical findings. This contrasts with his February 2005 notes, which recorded lumbar muscle tenderness, and his August 2005 notes, which did not record any lumbar muscle tenderness, but mentioned mildly decreased grip strength and trigger points on her left shoulder and neck.. The Court finds no error.

## Judge Kayser's prior decision

As in *Rogers*, Judge Kayser's first decision in the present case was equivocal on the issue of whether the plaintiff's suffered from "severe" fibromyalgia. In his numbered findings, the ALJ found simply that "[t]he claimant has impairments that are considered 'severe' based on the requirements in the Regulations 20 CFR § 404.1520(c)." Finding No. 3 (AR, p. 27). In the body

9

of his decision, the ALJ stated that "[t]he preponderance of evidence establishes the following severe medically determinable impairments: osteoarthritis of the left arm and wrist, rheumatoid arthritis, asthma, morbid obesity, hypertension, depression not otherwise specified and anxiety not otherwise specified" (AR, p. 20). Mention of fibromyalgia is conspicuously absent from the foregoing list of "severe" impairments. Yet the ALJ proceeds to uncritically note that Dr. Goldfarb has diagnosed the plaintiff as suffering from fibromyalgia (AR, p. 21).

As in *Wimsatt*, supra, Judge Kayser rejected the treating physician's opinion simply because it was not supported by objective findings, to-wit (AR, p. 24):

> The Administrative Law Judge does not accept the fibromyalgia residual functional capacity questionnaire completed by Dr. Lengel. At the hearing, Dr. Cooke repudiated such a residual functional capacity espoused by Dr. Lengel as far too restrictive, since the record as a whole demonstrated **no objective evidence** *(emphasis added)* of inflammation or joint effusion, no loss of range of motion and no tissue destruction made obvious. Dr. Cooke testified that a less restrictive, light exertional residual functional capacity was appropriate. Further, **subjective complaints, not objective findings** *(emphasis added)*, were the basis of Dr. Lengel's opinion residual functional capacity.

**The ALJ's evaluation of Dr. Lengel's opinion in his present decision**

Unlike his prior decision, Judge Kayser, in the present decision, specifically lists fibromyalgia among the plaintiff's "severe" impairments. Finding No. 3. Following the prior order of remand, the ALJ's weighing of Dr. Lengel's fibromyalgia questionnaire appears somewhat circumspect and appears to carefully avoid the perilous "objective" / "subjective" words, to-wit (AR, p. 534):

> On June 15, 2005, Dr. Lengel issued a statement [i.e., the fibromyalgia questionnaire] .... The Administrative Law Judge rejects the limitations assessed by treating physicians Drs. Goldfarb and Lengle, since it is not supported by acceptable medical evidence and is found to be contradicted by **other evidence** *(emphasis added)* and inconsistent with the evidence as a whole.

10

The "other evidence" referred to by the ALJ and found to be inconsistent with Dr. Lengel's questionnaire is identified as follows (AR, pp. 534-535):

    1. In addition to fibromyalgia, the questionnaire identifies several medical impairments that the plaintiff allegedly suffers from, including Sicca symptoms, Raynaud's phenomenon, carpal tunnel syndrome, irritable bowel syndrome, temporomandibular joint dysfunction, and breathlessness (AR, p. 382). These diagnoses are well-documented in the treatment records in and around June of 2005.

    2. There is no indication of follow-up with Dr. Goldfarb after May of 2005.

    3. The treatment records from Dr. Goldfarb show that the plaintiff had complaints only "sometimes."

    4. The treatment records from Dr. Lengel show no visits during the entirety of 2007.

    5. The plaintiff had earnings in 2005, and 2006, and a notation from Dr. Lengel dated May 22, 2008, states that "[t]he patient is now a housewife and no longer working outside the home" (AR, p. 661).

    6. The plaintiff had no more than mild restrictions in activities of daily living.

    7. In addition to her fibromyalgia symptoms, the plaintiff complained of medical conditions for which there was no evidence. For example, she complained of arthritis in the knees, yet x-rays from July of 2008, were normal.

The magistrate judge concludes that the ALJ identified a substantial basis for rejecting Dr. Lengel's disabling opinions. The foregoing conclusion is buttressed by the fact that Dr. Lengel's treatment records do not consistently demonstrate that the plaintiff's symptoms have progressively increased in severity.

We note in passing that, in his written decision, the ALJ did not explicitly discuss every factor listed at 20 C.F.R. § 404.1527(d) in relation to Dr. Lengel's opinions. However, there is no reason to speculate that the ALJ did not, in fact, consider them. Nor is there any indication that a more thorough consideration of these factors would or should have resulted in the ALJ's acceptance of Dr. Lengel's disabling opinions. No purpose would be served by a remand for a new decision.

At the most recent hearing, Robert Salzman, M.D., testified as an expert on fibromyalgia. Like Dr. Cooke, who testified at the prior hearing, Dr. Salzman perhaps made some statements that, if taken out of context, tend to suggest that he was requiring too much by way of objective medical proof and documentation. However, these matters do not warrant a disturbance of the Commissioner's final decision. Dr. Salzman acknowledged that the plaintiff has fibromyalgia and that such individuals may be expected to experience real but purely subjective limitations. However, Dr. Salzman did not believe that a disabling level of limitation had been proven or documented in this case (AR, pp. 682 and 688).

**The ALJ's evaluation of the plaintiff's credibility**

We are well-aware that *Rogers* faulted the ALJ's credibility analysis based upon an "absence of objective medical evidence supporting her symptoms, Rogers' own testimony regarding her daily activities, and testimony by Dr. Leeb that the best treatment for fibromyalgia patients is to exercise regularly." "Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors

12

bearing on the limitations of the claimant to perform basic functions." *Rogers* quoting Social Security Ruling (SSR) 96-7p. "[T]he ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility." Id.

Nevertheless, one of the factors (perhaps the most important factor) in evaluating a claimant's credibility is the consistency of her allegations with the medical evidence as a whole. As indicated above, the ALJ identified seven reasons for declining to defer to the disabling opinion of Dr. Lengel. The magistrate judge concludes that these same factors substantially supported the ALJ's finding that, although [t]he claimant is generally credible regarding the nature of her impairments that were established by the medical evidence of record, ... she is not credible in her assertion that her combined impairments preclude her from all full-time work activities" (AR, p. 535). Importantly, Judge Kayser does not appear to have fallen into the "trap" of attributing his credibility findings to an absence of objective medical evidence. To the extent he did refer to a lack of objective evidence, it was only in the context of observing that the plaintiff's other complaints (such as knee problems) lacked an objective basis.

We are struck by what appears to us to be the symmetry of a just consideration of a claim of disability based upon the presence of an impairment the symptoms of which are inherently subjective. On one hand, it would be unfair to discount a treating source medical opinion due solely to a lack of supporting objective evidence. But, on the other hand, it appears equally unfair to require an ALJ, who is charged with assessing credibility, to articulate purely objective bases for rejecting inherently subjective complaints. We conclude that what we might label the "strict" approach to credibility taken by the court in *Rogers* was appropriate because the ALJ in *Rogers* erroneously dismissed or minimized the treating source medical opinions. We have concluded that no such error occurred in this case. To the extent that conclusion is correct, the usual "deferential"

approach to credibility seems to make more sense. The magistrate judge concludes that, in light of the inherently subjective nature of the plaintiff's fibromyalgia and the ALJ's weighing of the medical opinions as a whole, the ALJ's credibility rationale was "sufficiently specific" as contemplated by SSR 96-7p. The ALJ's new decision adequately comports with this courts prior memorandum opinion and order of remand.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).